[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11574
Non-Argument Calendar
_____

Agency No. 3-15628

DANIEL IMPERATO,

Petitioner,

versus

U.S. SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

Petition for Review of a Decision of the
Securities and Exchange Commission
_____

(August 11, 2017)

ON PETITION FOR REHEARING

Before MARTIN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After considering the petition for rehearing filed by the Securities and Exchange Commission ("SEC"), we vacate our previous opinion, dated June 30, 2017, and issue this revised opinion in its stead.

Daniel Imperato, proceeding pro se, petitions for review of the SEC's final order permanently restricting his participation in any penny stock offering and in various securities-industry roles.  See 15 U.S.C. § 78o(b)(6).  In response, the SEC argues Imperato's petition is meritless but requests that we vacate part of its order.  After careful review, we deny Imperato's petition and vacate the SEC's order in part.

I.

In 2012, the SEC filed a civil enforcement complaint in federal court against Imperato and other defendants, including his company, Imperiali.  The SEC alleged the defendants violated several securities laws.  The magistrate judge issued a report and recommendation ("R&R") recommending that the district court grant the SEC's summary judgment motion.  See SEC v. Imperiali, Inc., No. 12-80021-CIV, 2013 WL 12080193, at *1 (S.D. Fla. Sept. 25, 2013).  The magistrate judge found that Imperato violated a number of securities laws by: (1) knowingly making and disseminating "blatantly false and deceptive material statements" as part of a fraudulent scheme to lure investors to Imperiali with an intent to deceive, id. at *4; (2) selling unregistered shares of Imperiali, id. at *3; (3) engaging in

2

broker conduct—including solicitation of potential Imperiali investors—without registering as a broker with the SEC, id. at *5–6; and (4) failing to comply with various statutory and SEC reporting and recordkeeping requirements.[1] Id. at *6. The district court adopted the R&R and granted the SEC's motion for summary judgment. SEC v. Imperiali, Inc., No. 12-80021-CIV, 2013 WL 12080173 (S.D. Fla. Oct. 8, 2013). The court then entered a judgment permanently enjoining Imperato from violating a number of securities laws and ordering him to disgorge (1) $2,493,785 in ill-gotten profits; and (2) $640,703 in prejudgment interest. SEC v. Imperiali, Inc., No. 12-80021-CIV, D.E. 195, at 1–10 (S.D. Fla. Nov. 7, 2013).

Imperato appealed, and this Court affirmed. SEC v. Imperiali, Inc., 594 F. App'x 957, 959 (11th Cir. 2014) (per curiam) (unpublished). In summarizing the facts, the Imperiali panel noted that Imperato had distributed a memorandum to existing and prospective investors stating the proceeds of Imperiali's stock offering would be invested in up to fifteen publicly traded companies. Id. at 959. However, those funds were instead transferred to another one of Imperato's companies, and Imperato used them for personal ends. Id. Imperato then continued to make false statements, announcing in a press release that Imperiali was generating revenue from equity investment into public companies. Id. Beyond that, when Imperiali later elected to be regulated by the SEC as a business-

---

[1] The magistrate judge also found Imperato liable for Imperiali's violations as a controlling person and an aider and abettor. Id. at *4 n.6.

development company, "Imperato directed Imperiali to file statements with the [SEC] that overrepresented Imperiali's assets by millions of dollars." Id.  The Imperiali panel also addressed issues of material fact asserted by Imperato. Id. at 960.  In doing so, it held "[t]he record established that Imperato dictated and approved press releases and financial statements that included millions of dollars in false investments, including a $70 million valuation of investments in companies that were never incorporated and that Imperato testified had 'no operation.'" Id. at 961.  Further, the panel concluded Imperato filed with the SEC a number of forms containing "material misrepresentations about the value of Imperiali and its subsidiary companies." Id.

On November 27, 2013, during the pendency of Imperato's appeal, the SEC brought an administrative proceeding under § 15(b) of the Securities Exchange Act to determine whether it should impose additional remedial sanctions against Imperato.[2]  In his answer, Imperato disputed the district court's factual findings in the earlier civil enforcement action.  He also argued the district court's judgment violated his due process rights, and that the SEC's follow-on administrative proceeding violated his due process and trial-by-jury rights.  Further, he said the conduct alleged by the SEC occurred outside the five-year statute of limitations.

---

[2] The SEC noted that such a proceeding—that is, one seeking to impose sanctions against someone after he has been enjoined from acts involving securities fraud—is commonly called a "follow-on" proceeding.

An administrative law judge ("ALJ") issued a decision granting the SEC's motion for summary disposition. The decision permanently barred Imperato "from associating with a broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization, and from participating in an offering of penny stock." The ALJ concluded this industry-wide bar against Imperato was appropriate after considering the factors set out in Steadman v. SEC, 603 F.2d 1126, 1140 (5th Cir. 1979), aff'd, 450 U.S. 91, 101 S. Ct. 999 (1981). The ALJ also determined the doctrine of collateral estoppel precluded Imperato from challenging the district court's findings, attacking the district court's judgment, and relitigating issues. Finally, the ALJ found the follow-on proceeding fell within the five-year statute of limitations because that limit ran from the date Imperato was enjoined from future securities law violations, and not from the date of Imperato's underlying conduct.

Imperato appealed the ALJ's initial decision to the SEC. On March 27, 2015, after independently reviewing the record and considering the Steadman factors, the SEC determined the lifetime industry-wide bar imposed by the ALJ against Imperato was appropriate and in the public interest. Further, the SEC concluded the doctrine of collateral estoppel prevented Imperato from attacking the district court's injunction and the issues actually litigated and necessary to the district court's decision. Finally, the SEC found that (1) the follow-on proceeding

5

was not subject to the five-year statute of limitations because it sought an industry bar, and not a civil fine, penalty, or forfeiture; and (2) even if the statute of limitations applied, the follow-on action fell within the statute of limitations because the SEC brought it less than one month after the district court enjoined Imperato.

On April 8, 2015, Imperato filed a motion for reconsideration with the SEC. Five days later, on April 13, 2015, Imperato filed a petition for review of the SEC's order in this Court. On May 6, 2015, the SEC denied Imperato's motion for reconsideration. Then, on May 15, 2015, the SEC filed a motion to dismiss Imperato's petition for review for lack of jurisdiction. In response, Imperato filed a "[s]econd [n]otice of appeal" on May 28, 2015. In it, he purports to file an "[a]mended notice of appeal if required by this [C]ourt" and identifies both the SEC's March 27, 2015 order and its May 6, 2015 denial of his motion for reconsideration. This Court ordered that the SEC's motion to dismiss be carried with the case.[3]

---

[3] This Court also issued a jurisdictional question that asked (1) whether Imperato's motion for reconsideration with the SEC was timely filed; and (2) what effect an untimely motion for reconsideration would have on the finality and appealability of the SEC's March 27, 2015 order. Because our jurisdictional holding in this case does not implicate this question, we do not discuss it further.

II.

We first address whether we have jurisdiction to consider Imperato's petition for review. This Court has jurisdiction over a petition to review any "final order" of the SEC.[4] 15 U.S.C. § 78y(a)(1). However, an order is not "final and reviewable" by this Court if there is a motion for reconsideration of that order pending before the SEC. See Aeromar, C. Por A. v. Dep't of Transp., 767 F.2d 1491, 1493 (11th Cir. 1985) (per curiam). The SEC says this Court lacks jurisdiction to consider Imperato's petition to review the SEC's order because he filed it on April 8, 2015, while his motion for reconsideration of the SEC's order was still pending. The SEC also argues its later denial of his motion for reconsideration on May 6, 2015 "does not retroactively validate" his "incurably premature" April 8, 2015 petition.

We need not address whether Imperato's April 8, 2015 petition for review was "incurably premature." Instead, we conclude we have jurisdiction to review the SEC's order because Imperato's "[s]econd [n]otice of appeal," filed on May 28, 2015 in response to the SEC's motion to dismiss, was sufficient to qualify as a second petition for review. In that notice of appeal, Imperato (1) identified himself as the appealing party; (2) identified the SEC's March 26, 2015 order and its May

_____

[4] In order to obtain review in this Court, the petitioner must (1) reside or have his principal place of business in this circuit; and (2) file his petition for review within sixty days after the SEC enters its order. 15 U.S.C. § 78y(a)(1).

7

6, 2015 denial of his motion to reconsider that order; and (3) sought relief from this Court.  See Rinaldo v. Corbett, 256 F.3d 1276, 1278–79 (11th Cir. 2001) (detailing the factors courts examine to determine "whether a pro se appellant's brief could constitute a notice of appeal").  He also filed the notice within sixty days of the SEC's denial of his motion for reconsideration, as is required for petitions to review SEC orders.  See 15 U.S.C. § 78y(a)(1).  Liberally construing Imperator's pro se second notice of appeal as we must, see Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008), it constitutes a new petition, and we have jurisdiction to review that petition.[5]  We therefore deny the SEC's motion to dismiss for lack of jurisdiction and proceed to the merits of Imperato's petition.

### III.

Imperato asserts several challenges against the SEC's order.  We address each in turn.  In doing so, we are mindful that the SEC's factual findings are "conclusive" if they are "supported by substantial evidence."  15 U.S.C. § 78y(a)(4).  Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S.

---

[5] Imperato did not pay a filing fee for this second petition for review, as required by Federal Rule of Appellate Procedure 15(e).  Neither did he submit a copy of the SEC order, as required by 11th Circuit Rule 15-2.  However, these rules are not jurisdictional requirements listed in the relevant statute.  See 15 U.S.C. § 78y.  Further, in light of our precedent warning that "claim-processing rules . . . requiring that the parties take certain procedural steps at certain specified times generally should not be deemed jurisdictional," Avila-Santoyo v. U.S. Att'y Gen., 713 F.3d 1357, 1360 (11th Cir. 2013) (en banc) (per curiam) (quotations omitted), we conclude these requirements are not jurisdictional.

552, 565, 108 S. Ct. 2541, 2550 (1988) (quotation omitted). We review de novo the SEC's legal conclusions. Orkin v. SEC, 31 F.3d 1056, 1063 (11th Cir. 1994). We will "overturn the SEC's decision to impose a particular sanction only upon finding a gross abuse of discretion." Id. at 1066.

## A.

Imperato seems to challenge his underlying liability for violating numerous securities laws as determined by a federal district court and affirmed by this Court. See Imperiali, 594 F. App'x at 959. However, we will not entertain a collateral attack on an earlier injunction or finding of liability in a follow-on administrative proceeding. See Elliott v. SEC, 36 F.3d 86, 87 (11th Cir. 1994) (per curiam) (rejecting a petitioner's collateral attack on his criminal conviction and injunction); see also Siris v. SEC, 773 F.3d 89, 95 (D.C. Cir. 2014) ("In an administrative proceeding following an injunctive action, the petitioner may not relitigate those factual questions conclusively decided in the underlying civil suit . . . ."); Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1108 (D.C. Cir. 1988) (holding that "an attack on the validity of [a] district court injunctive proceeding" that could have been raised there "is doomed to fail"). Thus, Imperato is precluded from challenging his underlying liability.

9

B.

Imperato also emphasizes the severity of the lifetime industry-wide bar imposed against him.  We construe this as an argument that the SEC's decision to impose that bar was a gross abuse of discretion.[6]  See Orkin, 31 F.3d at 1066.  We conclude, however, that the SEC did not grossly abuse its discretion.

In analyzing whether the public interest supports a particular set of remedial sanctions against a person who violated securities laws, the SEC should consider, among other factors: (1) "the egregiousness of the [respondent's] actions"; (2) "the isolated or recurrent nature of the infraction"; (3) "the degree of scienter involved"; (4) "the sincerity of the respondent's assurances against future violations"; (5) "the [respondent]'s recognition of the wrongful nature of his conduct"; and (6) "the likelihood that the [respondent]'s occupation will present opportunities for future violations."  Steadman, 603 F.2d at 1140 (quotation omitted).[7]  Here, the SEC considered these factors and determined that all of them weighed against Imperato and substantially in favor of imposing a lifetime industry-wide bar against him. We do not read Imperato's pleadings to challenge any specific aspect of the SEC's analysis.  Neither does he identify any mitigating factors the SEC failed to consider.  In any event, the factual findings underlying the SEC's analysis are

_____

[6] Imperato does not challenge the SEC's authority to impose such a bar against him under 15 U.S.C. §§ 78o(b)(4)(C) and (b)(6).

[7] Under Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we are bound by all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

supported by substantial evidence.  For example, the SEC's conclusion that Imperato "acted with a high degree of scienter" is consistent with the district court's finding that he knowingly made "blatantly false and deceptive material statements" with an intent to deceive, manipulate, or defraud.  Imperiali, 2013 WL 12080193, at *4.  Also, the arguments Imperato offered in the follow-on administrative proceeding support the SEC's determination that instead of "provid[ing] assurances against future violations or acknowledg[ing] his wrongful conduct," Imperato "continues to deny wrongdoing and attempts to shift blame to others."  On this record, we cannot say the SEC grossly abused its discretion by imposing a lifetime industry-wide bar against Imperato.

## C.

In several parts of his brief, Imperato argues the follow-on administrative proceeding brought by the SEC was unfair because (1) the SEC "act[ed] as [p]rosecutor, [j]ury, and [j]udge," which violated due process; and (2) the SEC violated his Seventh Amendment right to a jury trial.  These arguments are meritless.  First, this Court has held that the SEC "may combine investigative, adversarial, and adjudicative functions, as long as no employees serve in dual roles."  Sheldon v. SEC, 45 F.3d 1515, 1519 (11th Cir. 1995) (quotation omitted).  Imperato does not argue, and the record does not show, that SEC employees were serving dual roles in the course of the follow-on proceedings.  Second, it is well-

established that the Seventh Amendment does not require a jury trial in administrative proceedings designed to adjudicate statutory "public rights." Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 455–56, 97 S. Ct. 1261, 1269 (1977).

### D.

Next, Imperato says the SEC initiated its follow-on administrative proceeding after the statute of limitations expired. But he cannot prevail on this argument either. The statute of limitations that arguably applies in this case is 28 U.S.C. § 2462, which says any "proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" must be brought "within five years from the date when the claim first accrued" unless another statute specifies otherwise.[8] Even assuming (without deciding) that § 2462 applies here—that is, assuming the lifetime industry-wide bar against Imperato is a "civil fine, penalty, or forfeiture"—the SEC complied with § 2462 because it brought its follow-on proceeding "within five years from the date when [its] action first accrued." Specifically, the SEC's cause of action for its follow-on proceeding did not accrue until the district court permanently enjoined Imperato from violating several securities laws on November 7, 2013. Imperiali, No. 12-80021-CIV, D.E. 195, at

---

[8] Imperato also cites 28 U.S.C. § 1658, but that statute applies only to (1) actions based on statutes enacted after § 1658 was enacted in 1990, see Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 313(a), 104 Stat. 5089, 5114; and (2) "private" securities fraud actions. The SEC brought its follow-on administrative proceeding under § 15(b) of the Securities Exchange Act, which was enacted before 1990.

1–8; see 15 U.S.C. § 78o(b)(6)(A)(iii); see also In re Contorinis, Exchange Act Release No. 72031, 2014 WL 1665995, at *3 (Apr. 25, 2014) ("[A]ny applicable statute of limitations for a follow-on proceeding . . . runs from either the date of the criminal conviction or the injunction upon which the action is based, not from the date of the underlying conduct."). And the SEC initiated its follow-on proceeding on November 27, 2013, less than three weeks after the district court handed down its injunction.[9]

## IV.

Finally, although Imperato's petition for review has no merit, the SEC has asked us to vacate the industry bars against Imperato prohibiting his association with investment advisors, municipal securities dealers, transfer agents, municipal advisors, and nationally recognized statistical rating organizations. The SEC tells us it gained its authority to impose these restrictions in 2010 from the Dodd-Frank

---

[9] Imperato raises a variety of other arguments without merit. First, he says the SEC's docket sheet is "incomplete," but fails to identify any materials that are missing. Second, Imperato argues the SEC "withheld vital evidence," but he does not identify why the evidence he points to is relevant. Third, he cites Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986), to argue the SEC failed to apply the correct standard when it reviewed the ALJ's initial decision. However, Anderson is about the summary judgment standard in federal civil actions, and not about an agency's review of an ALJ's decision. Id. at 257, 106 S. Ct. at 2514–15. Here, the SEC correctly conducted a de novo assessment of the ALJ's order. See Jarkesy v. SEC, 803 F.3d 9, 12–13 (D.C. Cir. 2015) ("The Commission reviews ALJ decisions de novo."). Finally, Imperato asserts some challenges he did not raise during the follow-on administrative proceedings, but gives no reasonable grounds for failing to raise those arguments to the SEC. Those challenges are therefore forfeited. See 15 U.S.C. § 78y(c)(1).

13

Act.[10]  However, the SEC now advises it based these restrictions on Imperato's

pre-Dodd-Frank conduct.  As a result, these bars may give the SEC's Dodd-Frank

powers an impermissible retroactive effect.  We have the authority to modify the

SEC's order.  See 15 U.S.C. § 78y(a)(3).  We deny Imperato's petition, but in

response to the SEC's request, we vacate the portion of the SEC's order that

imposed the five industry bars prohibiting Imperato from associating with

investment advisors, municipal securities dealers, transfer agents, municipal

advisors, and nationally recognized statistical rating organizations

**PETITION DENIED; COMMISSION ORDER VACATED IN PART.**

---

[10] Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).